**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


KENNETH MCCORMICK,

        **Plaintiff,**

                                 **Case No. 05-70830**

**v.**

                                 **HONORABLE DENISE PAGE HOOD**

**CHARTER TOWNSHIP OF**
**CHESTERFIELD, et. al.**

        **Defendants.**
_____/

<u>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

**I.    INTRODUCTION**

      This matter is before the Court on Defendants' Motion for Summary Judgment filed February 1, 2006, and Plaintiff's Ex-Parte Motion to Extend Time to Respond to Defendants' Motion for Summary Judgment *Nunc Pro Tunc*, filed May 26, 2006. Plaintiff filed a Response on May 26, 2006.

**II.    STATEMENT OF FACTS**

      Plaintiff is a citizen of the Charter Township of Chesterfield, one of the named Defendants. (Compl. ¶ 1). Defendants Larry Kersten, Daniel Van Acker, K. Unger, Ken Franks, and Jimmy Gates were employees of the Charter Township of Chesterfield, assigned to the Chesterfield Police Department. *Id*. ¶ 5. On or about March 4, 2003, Defendants arrived at the Plaintiff's place of business and arrested the Plaintiff on a domestic violence charge. *Id*. ¶¶ 10-11. Plaintiff argues that the Defendants included misleading statements in their police reports to intentionally make it appear

1

as if the Plaintiff was guilty. *Id.* ¶ 12. Plaintiff filed the Complaint on March 3, 2005, alleging ten counts against the various Defendants: (1) Assault and Battery; (2) False Arrest/False Imprisonment; (3) Malicious Prosecution; (4) Abuse of Process; (5) Intentional Infliction of Emotional Distress; (6) Gross Negligence; (7) Warrantless Search and Seizure Without Probable Cause in violation of the Fourth Amendment and 42 U.S.C. § 1983; (8) Malicious Prosecution in violation of the Fourth Amendment and 42 U.S.C. § 1983; (9) Malicious Prosecution in violation of the Fourteenth Amendment's Due Process Clause and 42 U.S.C. § 1983; and (10) Constitutional violations by Defendant Charter Township of Chesterfield. *Id.* at 4-12. Plaintiff voluntarily dismissed Defendants Charter Township of Chesterfield and K. Unger from this action. (Pl.'s Resp. at 12).

## III.   STANDARD OF REVIEW

Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

2

IV.    **APPLICABLE LAW & ANALYSIS**

Defendants seek summary judgment on all counts of the Complaint.

A.    **Qualified Immunity**

With respect to qualified immunity, it is generally a threshold defense whose applicability is to be determined by the trial judge. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). Governmental officials are entitled to qualified immunity when their discretionary acts do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992). The Supreme Court has set forth a two-part test to determine whether qualified immunity should attach. First, the court must decide whether, in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 121 (2001). If there is no such violation, the inquiry ends here. *Id*. If a violation can be adequately stated, the court next asks whether the right was clearly established. *Id*. Providing guidance in determining whether a right was clearly established, the Court stated, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. *Saucier* also provides that an officer's reasonable mistake is still cloaked with immunity. *Id*.

Once Defendants have provided facts showing that the officers were acting within the scope of their authority, the burden of demonstrating that qualified immunity is inappropriate falls on the shoulders of Plaintiff. *See, e.g., Sheets v. Mullins*, 287 F.3d 581 (6th Cir. 2002). Plaintiff must show that the officers violated a right so clearly established that any official in Defendant officers' positions would have understood that they were under an affirmative duty to refrain from such

3

conduct. *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989).

Immunity is afforded even if law enforcement officials "reasonably but mistakenly conclude that probable cause is present." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*quoting Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).   The Supreme Court has further stated that probable cause to arrest exists if "at the moment the arrest was made  .  .  .  the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that a crime occurred. *Hunter*, 502 U .S. at 228 (*quoting Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Again, the focus, for purposes of qualified immunity, is on the objective legal reasonableness of the official's actions in light of clearly established law. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir. 1988).

Domestic assault is prohibited by Michigan law.  The Michigan statute provides:

> (2) Except as provided in subsection (3) or (4), an individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

M.C.L. 750.81.  Criminal assault occurs when a person engages in threatening conduct designed to put another in apprehension of an immediate battery. *People v. Reeves*, 458 Mich. 236; 580 N.W.2d 433, 436 (1998)

Defendants argue that the arrest of the Plaintiff was supported by probable cause.  Plaintiff was arrested for assaulting his wife of the time, Barbara McCormick.  (Def.'s Mot. Summ. J. at 1). Defendant Kersten received a telephone call from Mrs. McCormick on March 3, 2003.  (Def.'s Mot. Summ. J., Ex. B).  When Defendant Kersten called her back the line was busy.  *Id*.  Defendant Kersten then called Mrs. McCormick's sister, Teresa Codingham, who informed him that the

4

Plaintiff and Mrs. McCormick had been fighting all night and that Mrs. McCormick was at the Dash-N-Deli, the business the Plaintiff shared with his wife. *Id*. Defendant Kersten informed dispatcher Vandenboom of the call and told her that he believed there was a "domestic in progress" at the Dash-N-Deli. *Id*. Dispatcher Vandenboom dispatched Defendants Franks and Van Acker to the business. *Id*. Defendant Kersten also went to the Dash-N-Deli. *Id*. Upon arrival at the scene, Defendant Van Acker stated that a Dash-N-Deli employee, Phyliss Maiden, told officers "it's really bad this time." Plaintiff testified that he and Mrs. McCormick were involved in a physical struggle over the business checkbook. (Def.'s Mot. Summ. J., Ex. A at 50-52). Mrs. McCormick told officers that the Plaintiff grabbed her by the arm and attempted to escort her out the back door of the store. (Def.'s Mot. Summ. J, Ex. B). Mrs. McCormick also told officers that she and the Plaintiff had been arguing the night before and the morning the police were called. *Id*. Defendant Kersten also states that another individual, Nigel Ciappara, told him that the Plaintiff had threatened Mrs. McCormick in the past, stating "I have been present when Ken has threatened Bobbi (Barbara) and he has told her that he has friends that own farms, and that he would grind her up if she ever went to the police, and rubbed his forefinger and thumb together and said, you know what I mean." *Id*. Defendant Kersten's report states that on October 7, 2002, Mrs. McCormick filed a complaint because she was worried that her husband was going to kill her. *Id*. At that time, Mrs. McCormick did not want to pursue a domestic violence complaint, but stated that she wanted something on file in case something happened to her. *Id*.

Plaintiff has not responded in writing to Defendants' arguments regarding the existence of probable cause to arrest the Plaintiff. However, at the June 28, 2006 hearing regarding this matter, Plaintiff argued that the Defendants did not have probable cause based on the information provided

5

to them at the time.  Plaintiff argues that the lack of probable cause is evidenced by a statement of

Defendant Van Acker, in which Defendant Van Acker tells the Plaintiff to either fire an employee

(who Plaintiff's wife accused Plaintiff of having an affair with), or go to jail.  In his deposition

testimony, Plaintiff states that Defendant Van Acker repeatedly told Plaintiff that he could either fire

the employee or be arrested for domestic violence.  (Pl.'s Resp., Ex. A at 62-65).  Plaintiff testified,

in part:

> A    Officer Van Acker came outside.  Asked me to get out of the car.  I got out
>       of the car.  He told me to fire an employee or he was going to arrest me for
>       domestic violence.
> Q    I don't understand.  Fire an employee?
> A    Yes, sir.
> Q    Or be arrested for domestic violence?
> A    Yes, sir.
> Q    Did you understand what that meant?
> A    Yes, sir.  That meant either fire this employee or you're going to jail.

(Pl.'s Resp., Ex. A at 62).  Plaintiff also testified:

> A    He said that my ex-wife was accusing me of having an affair.
> Q    Oh, and the affair was with the employee?
> A    Yes, sir.
>                          *                    *                    *
> Q    Okay.  Did he say anything else about what his (sic) wife was claiming or
>       accusing you of?
> A    No, sir.
> Q    Your wife.  All right.  W[hat] does he say next?
> A    Told me to get back in the car.  I got back in the car.  He went back in the
>       store and he came out.  He told me to get my ass out of the car.  I got out
>       the car.  He said, "I'm not telling you again.  You're going to fire her."  I
>       said, "These are my businesses.  I'm not firing anybody.  I need everybody
>       because of my military accounts."  And he said, "I'm going to arrest you."
>       I said, "You can't.  I haven't done anything wrong."  And that's when he
>       placed me in handcuffs and arrested me for domestic violence.
> Q    Okay.  So that happened twice, then: He came out once, got you out of the
>       car, told you've got to fire an employee or be arrested for domestic violence?

(Pl.'s Resp., Ex. A at 63).  The deposition testimony further reads:

| Q | Okay. And then he comes back out after a few minutes? |
|---|---|
| A | Yes. |
| Q | Basically the same exchange again; he gets you out of the car and says you've got a choice, you can either fire an employee or be arrested for domestic violence? |
| A | Yes, sir. |
| Q | You said the same thing? |
| A | I'm not doing it. |
| Q | Not doing it, it's my business? |
| A | I can do what I what. Yes. |
| Q | Okay. And at that point in time he places you in handcuffs? |
| A | It was the second or third time he came out. I'm not sure if he went in the store twice while placing me in the vehicle or not. |
| Q | Okay |
| A | That's when I was arrested. |

(Pl.'s Resp., Ex. at 65). Plaintiff argues that this exchange shows the lack of probable cause for his arrest. Plaintiff further argued, at the hearing, that he may have been arrested as retaliation, as the officers have a personal relationship with Mrs. McCormick. Plaintiff's deposition testimony specifically states that Mrs. McCormick had or has a personal relationship with Defendant Kersten. (Pl.'s Resp., Ex. A at 42-46). However, the only evidence submitted to show a relationship between Mrs. McCormick and Defendant Kersten is secondhand information testified to by Plaintiff.

Plaintiff has not produced a genuine issue of material fact as to whether probable cause existed. Based on the witness statements, dispatcher call, statements of Mrs. McCormick and their own observations, the police officers had probable cause to arrest Plaintiff. As such, based on *Saucier* the Court's inquiry as to qualified immunity is complete, and the officers are immune from suit as to the constitutional claims. Consequently, these claims are dismissed.

**B.    Michigan Governmental Immunity Act/Gross Negligence**

Under Michigan's governmental immunity statute, police officers are immune from tort liability for injuries caused by them while acting in the course of their employment when certain

7

conditions are met. MCL § 691.1407(1)-(2)(c). The Michigan Governmental Immunity Act provides:

> (1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function....
>
> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
>> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>>
>> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>>
>> (c) The officer's employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

M.C.L. § 691.1407(1)-(2)(c). Summary judgment is appropriate only when no reasonable juror could conclude that the defendant's actions were grossly negligent. *See Tallman v. Markstrom*, 180 Mich. App. 141; 446 N.W.2d 618 (1989). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. 691.1407(2)(c). The manner in which to evaluate a police officer's use of force in making an arrest is governed by the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395-97 (1989). The relevant inquiry is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *Id.* at 397. The *Graham* Court noted that:

> The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . 'Not every push or shove, even if it may later seem unnecessary in the peace of a

8

judge's chambers,' violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

*Id*. However, intentional torts done by individual government employees are not shielded by the governmental immunity statute. *Sudul v. City of Hamtramck*, 221 Mich.App. 455, 458 (Mich.App. 1997).

There is no dispute that Defendant officers were acting within the scope of their employment as police officers. Plaintiff argues that Defendant officers acted with gross negligence as evidenced by arresting Plaintiff without probable cause,[1] making false statements in their police reports and/or failing to intervene to prevent the actions of the arresting and reporting officers.

### 1. Defendants Franks and Gates

Plaintiff fails to present the Court with sufficient evidence that Defendants Franks and Gates acted with gross negligence leading up to and during his arrest. Although Defendants Franks and Gates were present during the arrest, given that there was objectively reasonable probable cause to arrest Plaintiff, his allegations that these Defendants failed to intervene to prevent Officer VanAcker's actions do not constitute gross negligence. Nor could it be alleged that these Defendants committed an intentional tort against Plaintiff, as there is no testimony that they had any contact with Plaintiff. As such, Plaintiff's claims against Defendants Franks and Gates are dismissed.

### 2. Defendants Kersten and Van Acker

---

[1] The Court notes that there is an unresolved dispute as to whether Defendant Kersten was present during the arrest of Plaintiff.

9

The Court also finds that Plaintiff has not shown that there are genuine issues of material fact relating to whether officer's Kersten and Van Acker's actions were grossly negligent. Even assuming Plaintiff's allegations as true, the relevant inquiry is "whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation". Accordingly, Plaintiff has not shown that his arrest was not reasonable based on the facts before the officers. *Graham v. Connor*, 490 U.S. at 395-97.

### C. State Tort Claims

#### 1. Assault and Battery

Under Michigan law, a criminal assault is committed where an actor engages in some form of threatening conduct designed to put another in apprehension of an immediate battery; whether there was an apprehension of an immediate battery depends on what the victim perceived; and whether the apprehension of imminent injury was reasonable. *People v. Reeves*, 458 Mich. 236; 580 N.W.2d 433, 436 (1998). Whether there was an "apprehension of an immediate battery" depends "on what the victim perceived, and whether the apprehension of imminent injury was reasonable." *Id.*; *Hinchman v. Moore*, 312 F.3d 198 (6th Cir. 2002). Under Michigan law, a battery is the consummation of an assault. *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001).

Plaintiff alleges he was assaulted and battered when he was "forced against a wall, frisked, placed in the rear of a police vehicle and when he was handcuffed." (Pl.'s Resp. at 15). However, police have the right to use that amount of force reasonable under the circumstances to effectuate an arrest. *Delude v. Raasakka*, 391 Mich. 296, 303 (1974). Moreover, Plaintiffs may not rest upon mere allegations of their pleadings, but must set forth specific facts showing that there is a genuine issue for trial. MCR 2.116(G)(4). In the instant case, Plaintiff has not presented any concrete

10

evidence to show that any force was used against him.  As such, Plaintiff has not met his burden of showing there is a genuine issue of material fact on the claims of assault and battery and these claims are dismissed.

### 2.    False Arrest/False Imprisonment

To sustain a claim of false imprisonment, three elements must be met.  These elements are "(1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of confinement."  *Walsh v. Taylor*, 263 Mich.App. 618, 627 (Mich.App. 2004).  The confinement must also "have occurred without probable cause to support it.  *Id.*, citing *Peterson Novelties, Inc. v. Berkley*, 259 Mich.App.1, 18 (Mich.App. 2003).

Plaintiff alleges that his arrest and subsequent incarceration were effectuated without probable cause.  (Pl.'s Resp. at 16).   However, as discussed above, the Court finds that there was sufficient probable cause for the arrest of Plaintiff.  As such, Plaintiff's claims of false arrest and false imprisonment do not present triable issues of fact and are dismissed.

### 3.    Malicious Prosecution

To sustain a claim of malicious prosecution of a civil proceeding the plaintiff must show: (1) the prior proceedings terminated in favor of the present plaintiff; (2) the absence of probable cause for the prior proceedings; (3) malice, or a showing that the proceedings were filed for a purpose other than to secure the proper adjudication of the claim; and (4) special injury stemming directly from the prior proceedings.  *Dupis v. Kemp*, 2006 WL 401125 *1 (Mich.App. Feb. 21, 2006); *see also Young v. Motor City Apartments Limited Dividend Housing Association No. 1 and No. 2*, 133 Mich.App. 671, 675 (1984).

Plaintiff argues that his claim of malicious prosecution is actionable because Defendants Kersten and VanAcker initiated the criminal prosecution against Plaintiff by completing incident reports, which contained statements intended to make it appear as though Plaintiff committed an act of domestic violence.  (Pl.'s Resp. at 16).  Plaintiff further points to alleged statements made by Defendant VanAcker at the scene surrounding Plaintiff's alleged failure to fire Connie Kaiser.  *Id.* Defendant responds that even taking into consideration Plaintiff's contention that the police officers fabricated facts in their incident reports, the statements of the witnesses alone are sufficient to establish probable cause.  (Def.'s Mot. Summ. J. at 18).

Plaintiff has shown that the proceedings were terminated in his favor, as the charges were dismissed.  However, as discussed above, Plaintiff is unable to show the absence of probable cause, which is necessary to establish a claim of malicious prosecution.  Despite the alleged statements made prior to Plaintiff's arrest and the allegedly fabricated incident reports, Plaintiff is unable to establish a malicious prosecution claim.

### 4.        Abuse of Process

To recover under an abuse of process claim, the plaintiff must show: (1) an ulterior purpose and (2) an act in the use of the process that is improper in the regular prosecution of the proceeding. *Young*, 133 Mich. App. at 678.  An abuse of process claim requires proof of an act which itself corroborates the ulterior purpose.  *Mullen v. Wayne County*, 2005 WL 1750800, * 5 (Mich.App. 2005) (unpublished opinion).  "Such a claim addresses whether the defendant used a proper procedure for a purpose other than that intended."  *Id.*  The "ulterior purpose alleged must be more than harassment, defamation, or exposure to excessive litigation costs." *Early Detection Center*, 403 N.W.2d at 835.

Similar to Plaintiff's malicious prosecution claim, the Court finds that Plaintiff has not submitted sufficient evidence to establish that there is a question of fact as to whether Plaintiff was arrested for an ulterior purpose. *Id.* Although Plaintiff has produced evidence that suggests improper motives on the part of Defendants Kersten and Van Acker, the Court does not find that the allegations go beyond "harassment or defamation." *Early Detection Center*, 403 N.W.2d at 835. Plaintiff's abuse of process claim is dismissed.

### 5.    Intentional Infliction of Emotional Distress

In Michigan, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Duran v. Detroit News, Inc.*, 200 Mich.App. 622, 629-630 (1993). Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Linebaugh v. Sheraton Michigan Corp.*, 198 Mich.App. 335, 342 (1993).

Plaintiff argues that Defendants' actions of initiating the criminal investigation against him, arresting him without probable cause and making false statements in their police reports constitute extreme and outrageous conduct. The Court, however, does not find that these actions "go beyond all possible bounds of decency" or are sufficiently atrocious to constitute a claim of intentional infliction of emotional distress. Accordingly, Plaintiff's claim of intentional infliction of emotional distress is dismissed.

13

Accordingly,

     IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment **[Docket No. 24, filed February 1, 2006]** is GRANTED.

     IT IS FURTHER ORDERED that Plaintiff's Ex-Parte Motion to Extend Time to Respond to Defendants' Motion for Summary Judgment *Nunc Pro Tunc* **[Docket No. 30, filed May 26, 2006]** is GRANTED.


                                       <u>S/Denise Page Hood</u>
                                       Denise Page Hood
                                       United States District Judge

Dated:  September 30, 2006

     I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2006, by electronic and/or ordinary mail.

                                         <u>S/William F. Lewis</u>
                                       Case Manager